IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: | |
| Paul L. Leongas | Chapter 7 |
| Debtor | |
| | 15-B-27967 |
| ——————————————— | |
| | The Honorable Judge |
| PNC Bank, N.A., | Janet S. Baer |
| Plaintiff, | |
| | Adversary Proceeding No. |
| v. | 16-00489 |
| Paul L. Leongas, | |
| Defendant. | |

### JOINT PRETRIAL STATEMENT

Pursuant to the Amended Final Pretrial Order entered December 19, 2019, Adversary Plaintiff, PNC Bank, National Association, and Adversary Defendant, Paul L. Leongas, through their undersigned counsel, submit the following Pretrial Statement in advance of the trial scheduled to commence March 4, 2020.

### a.  Summary of the Adversary Proceeding

PNC's adversary complaint objects to Debtor being discharged  for the following reasons:

1.  False Oath, Transfers, and Concealment Related to Debtor's Income, Expenses, and Assets §727(a)(2)(A) and §727(a)(4)(A)

Debtor transferred and concealed his income in order to hinder, delay, and defraud Debtor's creditors.  In exchange for Debtor working 40 plus hours per week for the four family bars, Debtor caused the four bars/restaurants owned and operated by Debtor and his two sisters ("Four Curragh Bars") to directly to pay his and his wife's personal expenses rather than paying Debtor a salary in order to hinder, delay, and defraud Debtor's creditors.

As part of his efforts to conceal his income, Debtor intentionally failed to disclose, and made false oaths pertaining to, personal family living expenses paid by the Four Curragh Bars.  Debtor made these intentional false oaths and concealments related to his income, expenses, and assets in response to PNC's 735 ILCS 5/2-1402 citation to discover assets and as part of Debtor's bankruptcy schedules and testimony.

1

Debtor and his wife's personal living expenses paid by the Four Curragh Bars which Debtor made false oaths relating to, or concealed, include more than $9,400 in monthly mortgage payments for the residence in which Debtor lives with his family, in excess of $10,000 per month paid for American Express cards for which Debtor was an obligor, and $600 per month for Debtor's 2015 Infiniti. Rather than disclose Debtor's actual income, expenses, and assets, as part of his effort to conceal Debtor's Schedules use IRS standard expenses for household and auto expenses.

Debtor's Schedules fail to disclose a home equity line of credit in the original principal amount of $536,648.13 made by Bridgeview Bank Group to Debtor and his wife that was still outstanding when Debtor filed his Petition and Schedules. Debtor's Schedules also do not disclose household expenses paid monthly by Debtor's wife, which expenses PNC claims exceed $4,000 per month.

In addition to income in the form of expenses paid by the Four Curragh Bars, Debtor transferred and concealed, and made false oaths relating to, monies Debtor and his wife received from an entity entitled Edison Park Acquisition, LLC ("EPA"). At Debtor's direction, EPA paid funds directly to Debtor's wife and paid Debtor and his wife's personal expenses.. Debtor did not disclose any of these deposits or payments as income on his Schedules.

Proceeds from EPA's loan from Bridgeview Bank were also applied to tens of thousands of dollars in mortgage payments due to Bridgeview Bank on Debtor's HELOC and to the first Mortgage on his Residence.

Further, Debtor intentionally made false oaths, transferred, and concealed his $1.8 million residence. In exchange for Debtor working 40 plus hours per week for the Four Curragh Bars the bars paid the expenses, including two mortgages which exceeded $9,400 per month, for Debtor and his wife's residence which appraised at $1.8 million two months before Debtor filed bankruptcy. Also about two months before Debtor's filed bankruptcy, despite that Debtor's work for the Four Curragh Bars results in the payment of the expenses for Debtor's residence, a 'childhood friend' of Debtor, Jody Libman, transferred Debtor's residence to a trust having Debtor's mother-in-law as trustee and a Delaware limited liability company solely owned by Debtor's three minor children as beneficiaries.

The evidence will show Libman did not make the mortgage payments to Bridgeview Bank. Instead, those payments were made by EPA or Curragh bars on Debtor's behalf, because Debtor agreed to pay all of the expenses for the house in exchange for Libman allowing Debtor's family to remain living there rent free.

2. Debtor's Failure to Produce Documents Related to his Financial Records and False Oaths Related to Same §727(a)(4)(A), §727(a)(3), §727(a)(4)(D).

Debtor failed to produce documents related to his financial records and made false oaths related to same. Despite providing an affidavit of completeness, Debtor did not produce numerous emails related to his finances. Further, Debtor did not produce bank

records related to his finances, including the documents showing the extent of Debtor and his wife's personal expenses paid by the Four Curragh Bars, and resisted PNC's efforts to obtain the bank records by filing a motion to quash.

Debtor claims the payments to his creditors by Curragh bars well in excess of $19,000 monthly were "loans" that were accounted for as such on the books of those businesses.

3. Debtor Concealed, Made False Oaths Related to, and Failed to Produce Records for Cash He Received From the Curragh Bars and EPA.  §727(a)(2)(A), §727(a)(4)(A), §727(a)(3), §727(a)(4)(D)

During the relevant time Debtor received at least $25,200 in cash from the Four Curragh Bars and failed to disclose these amounts on his bankruptcy schedules. Additionally, during Debtor's 2004 exam, Debtor claimed that he did not receive any cash from the Four Curragh Bars which is false. Debtor has not produced documents demonstrating a legitimate business purpose for cash payments he received from EPA.

4. Debtor Concealed Income Tax Refunds Totaling $8,672.00 in Derogation of 727(a)(2)(B)

Two months after filing bankruptcy, Debtor and his wife received state and federal tax refunds totaling $8,672.00. Debtor did not disclose the refunds and instead deposited them into a bank account owned by EPC Properties, LLC which is affiliated with the Four Curragh Bars.

Defenses Debtor Raised in the Adversary Proceeding.

1. False Oath, Transfers, and Concealment Related to Debtor's Income, Expenses, and Assets §727(a)(2)(A) and §727(a)(4)(A)

Debtor asserts that he properly disclosed all material matters regarding his income, expenses, assets, and liabilities to his attorney in connection with the filing of the bankruptcy petition and that he testified consistently therewith at his 341 meetings of creditors.  Further, that the Debtor has raised the affirmative defense of "advice of counsel" asserting that to the extent his Bankruptcy Schedules are inaccurate it is due to the methodology employed in consultation with his counsel in filing the petition and schedules. Thus, if the Schedules did not include actual household expenses and used IRS standard expenses for a household of five persons or failed to characterize loans as income, Mr. Benjamin's advice regarding same negates the Debtor's intent to make an intentional and knowingly false statement.  Indeed, given the manner in which the expenses are disclosed it is difficult to conceptually attribute or impute those statements to the Debtor at all.  .

Debtor also contends any monies paid by Curragh bars, his family or EPC were "loans" and, at least, partially accounted as such on the books and records of the Curragh bars and EPC. The Plaintiff has not pleaded in its Complaint any theories or facts that would allow this Court to pierce the corporate veil or collapse the Debtor's family and friends, the Curragh Bars and/or EPC or EPA into the individual Debtor. This is a critical issue as Plaintiff continuously attempts to conflate and collapse such persons and entities into the individual debtor.

Even if this Court were to determine that the asserted omissions satisfied all remaining elements of the various Code provisions (they do not), PNC's case must still fail because the Debtor did not (a) act knowingly and intentionally (in the event this Court determines that he failed to make disclosures) of income and expenses; or (b) have the specific intent to hinder, delay and defraud his creditors through the claimed concealment of the residence and income. Finally, the Debtor is required to disclose projected or anticipated income on Schedule I– not historical.

As to the Edison Park property which was owned by PLL, LLC – such property was owned by PLL and not the Debtor. By definition a debtor cannot conceal property which he never personally owned. Also, as outlined previously, as to the Broadway property, such property was held in tenancy by the entirety by the debtor and his spouse, making such property was not available to collection by his creditors and sold pursuant to an approved short sale by his lender. Beyond that both transactions occurred well outside the one year look back period and despite the creditor's claims of concealment should not be considered by the Court in determining whether or not to grant the Debtor's discharge.

2. Debtor's Failure to Produce Documents Related to his Financial Records and False Oaths Related to Same §727(a)(4)(A), §727(a)(3), §727(a)(4)(D).

The Debtor has produced mountains of documents which have been heavily supplemented by PNC's own searches. There have been literally thousands and thousands of pages of documents disclosed by the Debtor. Discovery disputes are not typically the types of matters that courts have historically used to deny a debtor a discharge.

3. Debtor Concealed, Made False Oaths Related to, and Failed to Produce Records for Cash He Received From the Curragh Bars and EPA. §727(a)(2)(A), §727(a)(4)(A), §727(a)(3), §727(a)(4)(D)

The Debtor denies that he received any "cash" payments from the Curragh bars or EPA.

4. Debtor Concealed Income Tax Refunds Totaling $8,672.00 in Derogation of 727(a)(2)(B)

The sole wage earner in the Debtor's household was the Debtor's wife who was also solely the person responsible for payment of tax. Thus, any tax refund received was Mrs. Leongas' and not the Debtors.

## b. **Statement of Stipulated Facts**

4

The Parties have stipulated to the uncontested facts set forth in Exhibit 1 The facts in Exhibit 1 not identified as "uncontested" are disputed by the parties.

### c.  Witness Lists

PNC's Witness List is attached as Exhibit 2. Mr. Leongas' Witness List is attached as Exhibit 3.

### d.  Exhibit Lists

PNC Bank's Exhibit List, with Mr. Leongas' Objections, is attached as Exhibit 4. Mr. Leongas' Exhibit List, with PNC Bank's objections, is attached as Exhibit 5.

### Trial Exhibits

Two sets of pre-marked, tabbed exhibits that may be introduced at trial are tendered in three ring binders for the Court. Counsel have also exchanged their Witness Lists, Exhibit Lists and trial exhibits.

Dated: February 24, 2020.

Respectfully submitted by:

PNC Bank, National Association,

By: ____ */s/ John F. Sullivan* ____
John F. Sullivan (6205900)
Matthew L. Hendricksen (6296720)
Plunkett Cooney, P.C.
221 N. LaSalle, Suite 1550
Chicago, IL 60601
(312) 670-6900

Paul Leongas,

By: __ */s/ Konstantine Sparagis* __
Konstantine Sparagis (6256702)
Law Offices of Konstantine Sparagis, P.C.
900 W. Jackson Blvd., Ste. 4E
Chicago, IL 60607
(312)753-6956

Open.26645.73625.23674497-1

5

# EXHIBIT 1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS - EASTERN DIVISION

| | |
|---|---|
| IN RE:<br><br>Paul L. Leongas<br><br>       Debtor | Chapter 7<br>15-B-27967<br><br>The Honorable Judge<br>Janet S. Baer |
| PNC Bank, N.A.,<br><br>       Plaintiff,<br><br>  v.<br><br>Paul L. Leongas,<br><br>       Defendant. | Adversary Proceeding No.<br>16-00489 |

## PNC BANK N.A. STATEMENT OF CONTESTED AND UNCONTESTED[1] FACTS FOR TRIAL

### I. Description of the Parties and Relevant People/Entities Related to Debtor

1. UNCONTESTED - PNC Bank, N.A. ("PNC") is a national bank. It possesses two judgments against Debtor Paul Leongas "Debtor" that total $9,403,155.49 ("Judgments") and therefore is a creditor of Debtor. Trial Ex. 44.

2. UNCONTESTED - Debtor Paul L. Leongas is the individual who filed this Chapter 7 bankruptcy. He resides in Park Ridge, Illinois.

3. UNCONTESTED - Debtor graduated from Michigan State in 1990 with a degree in hotel/restaurant management. Doc. 175[2], its Ex. 2 (2004 Exam) p. 6 ln. 18.

4. UNCONTESTED - Debtor has worked in the restaurant business for almost his entire life. Doc. 175, its Ex. 3 (11/25/15 341 Mtg.) p. 39 ln. 8-9.

5. UNCONTESTED - Sharise Leongas is Debtor's wife. Doc. 175, its Ex. 2 p. 5 ln. 17.

6. UNCONTESTED - Debtor and his family have resided 921 Broadway, Park Ridge, IL ("Residence") since 2009. Doc. 175, its Ex. 3 p. 91 ln. 1.

---

1 "UNCONTESTED" facts are labeled as such and all other facts are contested.
2 PNC did not include transcripts from 341 meetings, 2004 exams, or depositions as part of its trial exhibits. To the extent the 341 meetings, 2004 exams, or depositions transcripts have been previously filed in this case, this statement of facts will reference the docket number for said transcript.

7.    UNCONTESTED - At the Relevant Time, one year before Debtor's bankruptcy filing, August 16, 2014 to August 16, 2015, (hereafter "Relevant Time") the Curragh Irish Pub had four locations, Chicago, IL (referred to the "Edison Park Location" since it's in the Chicago neighborhood of Edison Park), Glenview, IL ("Glenview Location"), Skokie, IL ("Skokie Location") and Holland, MI ("Holland Location").   The Edison Park Location, Skokie Location, Glenview Location, and Holland Location are hereafter collectively referred to as "Four Curragh Bars"). Trial Ex. 12.

8.    UNCONTESTED - At the Relevant Time, according to Debtor, Holland Pub, LLC owned and operated the Curragh bars/restaurants in Edison Park, IL and Holland, MI. Doc. 175, its Ex. 3 p. 65 ln. 12-13.

9.    UNCONTESTED - At the Relevant Time, according to Debtor, Debtor and his sister Sophia Leongas were the only owners of Holland Pub, LLC. Doc. 175, its Ex. 3 p. 64 ln. 8.

10.    UNCONTESTED - According to Debtor, EP Curragh, LLC previously owned and operated the Edison Park Curragh Location. Doc. 175, its Ex. 3 p. 16 ln. 20.

11.    UNCONTESTED - According to Debtor, at the Relevant Time, Curragh Glen, LLC owned and operated the Curragh pub/restaurant in Glenview, IL.  Doc. 175, its Ex. 3. p. 71 ln. 21 – p. 72 ln. 22.

12.    UNCONTESTED - For the Relevant Time, Debtor alleges his other sister Lydia Leongas was the only owner of Curragh Glen, LLC. Doc. 175, its Ex. 3 p. 73 ln. 14.

13.    UNCONTESTED - According to Debtor, at the Relevant Time, Skokie Curragh, LLC owned and operated the Curragh pub/restaurant in Skokie, IL.  Doc. 175, its Ex. 3 p. 73 ln. 20. p. 74 ln. 17.

14.    According to Debtor, at the Relevant Time, Skokie Curragh had three co-equal owners: a) EGIO Consulting LLC Series I, owned by Debtor's minor children, b) an entity related to Glenn Udell, and c) the Estate of Sheldon Kaufmann. Doc. 175, tis Ex. 3. p. 73 ln. 20. P. 74 ln. 17.

15.    According to Debtor, at the Relevant Time, the real estate where Edison Park Curragh is located, 6701-09 N Northwest Hwy., Chicago, IL ("Edison Park Real Estate"), was owned by EPC Properties, LLC ("EPC").  Doc. 175, its Ex. 3 p. 44 ln. 11-16.

16.    UNCONTESTED - According to Debtor, at the Relevant Time, Sophia Leongas was the sole owner of record for EPC. Doc. 175, its Ex. 3 p. 44 ln. 11-16, Ex. 29.

17.    UNCONTESTED - According to Debtor, at the Relevant Time, the real estate where Holland, Michigan Curragh is located, 73 East. 8th Street, Holland, MI, was owned by Downtown Holland Properties, LLC ("DHP"). Doc. 175, its Ex. 3 p. 65 ln. 24.

18.     UNCONTESTED - According to Debtor, at the Relevant Time the only owners of DHP were Debtor and Sophia Leongas. Ex. 3 p. 64 ln. 8.  Ex. 3 p. 65 ln. 20 – p. 66 ln. 16.

19.     According to Debtor, at the Relevant Time, the real estate where the Skokie, IL Curragh is located, 8266 N. Lincoln Ave., Chicago, IL, was owned by 8266 N. Lincoln, LLC. Doc. 175, its Ex. 3 p. 74 ln. 12.

20.     According to Debtor, at the Relevant Time, the owners of record of 8266 N Lincoln, LLC were: a) EGIO Consulting LLC Series I, owned by Debtor's minor children, b) an entity related to Glenn Udell, and c) the Estate of Sheldon Kaufmann. Doc. 175, its Ex. 3. p. 73 ln. 20. P. 74 ln. 17.

21.     According to Debtor, Dan Touhy ("Touhy") is a friend of Debtor and is one of Debtor's attorneys. Ex. 3 p. 47 ln. 5-6. He was also the alleged owner of Edison Park Acquisition LLC ("EPA"). Doc. 175, its Ex. 3. p. 43 ln. 5-12.

22.     According to Debtor, Jody Libman ("Libman") is a childhood friend of Debtor who allegedly purchased Debtor's Residence pursuant to a short sale and later transferred the Residence to for which Debtor's mother-in-law Judith Iovino is the trustee and EGIO Consulting LLC – Series G, owned by Debtor's minor children is sole beneficiary.  Doc. 175, its Ex. 3 p. 95 ln. 22, p. 99 ln. 12- p. 100 ln. 11.

## II. Statement of Jurisdiction

23.     UNCONTESTED - The Court has jurisdiction of the over the matter pursuant to 28 U.S.C. § 1334 and the internal operating procedure 15(a) of the United States District Court for the Northern District of Illinois.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

## III. PNC's 735 ILCS 5/2-1402 Citation

24.     After entry of the Judgments PNC initiated a citation proceeding ("Citation") against Debtor pursuant to 735 ILCS 5/2-1402. Trial Ex. 1, Doc. 175, its Ex. 3 p. 6-7.

25.     In response to PNC's Citation, Debtor answered that he had no income or assets. Trial Ex. 1.

26.     During Debtor's 2004 exam Debtor stated that the income and asset form accurately reflected his income and assets as of January of 2015. Doc. 175, its Ex. 2 p. 11 ln. 19 to p. 12 ln. 1.

27.     Debtor did not list any support or loans from family members on his answer to the Citation.  Trial Ex. 1; Doc. 175, its Ex. 3 p. 2.

## IV. Income

### A. Debtor's Income

28.  UNCONTESTED - Debtor was the sole member and manager of PLL, LLC ("PLL") at all times.

29.  In 2011 PLL, LLC had gross income of $225,000.  Trial Ex 60-2, its Sched. C.

30.  In 2012 PLL, LLC had gross income of $232,000. Trial Ex. 60-1, its Sched C.

31.  The source of PLL, LLC's income was its lease with EP Curragh, LLC for the Edison Park Real Estate.  Trial Ex. 74.

32.  Once PNC's foreclosure of the Edison Park Real Estate was complete PLL and consequently Debtor, was no longer entitled to receive rental income from the EP Curragh, LLC.

33.  Debtor listed no personal income from 2014 to 2015 in his bankruptcy schedules.  Trial Ex. 4 (Doc. 16) at 18.

34.  In his bankruptcy schedules, Debtor disclosed total monthly household income of $7,473.62 consisting of his wife's annual $75,000 salary from a Curragh bar and $2,517.57 per month in "contributions" from Holland Pub and Sophia Leongas.  Trial Ex. 5 (Summary of Schedules) Doc. 18 at 4.

35.  During PNC's 2004 Exam, Debtor described his role with the Four Curragh Bars as a "consultant." Doc. 175, its Ex. 2 p. 19 ln. 15, ex. 3 p35 ln. 9.

36.  Debtor is identified as an owner on the Four Curragh Bar's website.  Trial Ex. 6 (a printout from the Curragh's website titled "Who We Are" stating "Siblings and owners of the pub, Lydia and Paul Leongas..."; Trial Ex. 7 ("press release" from the Curragh's website where Paul Leongas is described as "owner");

37.  Debtor listed himself as a 100% owner when renewing the liquor licenses for the Skokie Curragh location and Edison Park location.  Trial Ex. 8 (2014 and 2015 liquor license applications showing Debtor as "100% owner").

38.  Debtor has held himself out to be "the manager" of the Edison Park Curragh Location.   Trial Ex. 10 (Debtor's LinkedIn page stating he is "manager" of Curragh Irish Pub; Trial Ex. 11 (affidavit of Debtor stating he is the "manager" of the Edison Park Curragh Location).

39.  UNCONTESTED - On average, Debtor spends a majority of his time, on average at least 40 plus hours per week, consulting for the Four Curragh Bars. Doc. 175, its

4

Ex. 2 p. 41 ln. 8-9.

40.     According to Debtor's Wife, during the Relevant Time, Debtor sometimes spent 60 hours per week working for the Four Curragh Bars.

41.     During his 2004 exam Debtor denied ever being an employee of the Four Curragh Bars. Doc. 175, its Ex. 2 p. 21 ln. 2-12.

42.     Debtor listed EP Curragh as his employer for three years, with a $10,000 per month salary on a loan application to Bridgeview Bank in 2011. Trial Ex. 45.

43.     During Debtor's 341 examination he stated he receives no income for 'helping' his sisters.  Doc. 175, its Ex. 3 p. 35 ln. 6-9 (in response to question from U.S. Trustee asking if he receives income Debtor states "No. it's a family business").

44.     During PNC's 2004 exam when asked about what compensation he receives from the Four Curragh Bars, Debtor stated he received car expenses and nothing further. Doc. 175, its Ex. 2 p. 49 ln. 16-17 ("Q: And anything else? A. Not of the top of my head.")

45.     During PNC's 2004 exam Debtor claimed not to understand the concept of "Income." Doc. 175, its Ex. 2 p. 14 ln. 15, p. 63 ln. 9-11, p. 103 ln. 20 – p. 104 ln. 21.

## B. Debtor's Wife's Income

46.     Statements for Debtor's Wife's one checking account at Park Ridge Community Bank ("PRCB") from July of 2014 to November of 2015 identify average monthly deposits of $26,737.65 and debits of $26,591.03.  Trial Ex. 52 (Park Ridge Community Bank Statements for account ending in x9701).

47.     From January of 2014 to March of 2015 Debtor's wife received at least $168,000 in checks drawn on –Edison Park Acquisition, LLC's account.  Trial Ex. 52 PRCB 28, 29, 35, 37, 49, 50.

48.     Debtor signed all but two of these checks on behalf of EPA. Trial Ex. 52 PRCB 28, 29, 35, 37, 49, 50.

49.     Debtor's wife claims she does not know why she received this $168,000 from EPA.

50.     Debtor and his wife did not list any monies from EPA as income on his bankruptcy schedules. Trial Ex. 4,5.

51.     In 2013, Debtor's wife received approximately $21,100 in checks signed by Debtor from an account owned by 635 Belden, LLC, which Debtor solely managed.  Trial Ex.

52 PRCB 4,12,15,16,17,19,22,23,26.

52.    In 2013, Debtor's wife received approximately $21,000 from and account owned by EP Curragh, Trial Ex. 52 PRCB 7-9,13,14,17.

53.    In 2013, Debtor's wife had cash deposits totaling $16,500. Trial Ex. 52 PRCB 3-27 noted by "Cash In" ticket).

54.    Debtor did not list the monies his wife received from various sources in 2013 in his bankruptcy schedules.  Trial Ex. 4 p. 18 (Doc. 16).

55.    Debtor's wife stated she had a salary of $175,000 and net worth of $475,916 in a personal financial statement submitted to Bridgeview Bank six months before Debtor's bankruptcy Trial Ex. 21, BVB BK 7788.

## C. Cash

56.    During Debtor's 2004 exam, Debtor claimed that he did not receive any cash from the Four Curragh Bars.  Doc. 175, its Ex. 2 p. 107 ln. 8-13.

57.    During the Relevant Time, Debtor cashed seven checks payable to "cash" from the Four Curragh Bars totaling $25,200.   Trial Ex. 40 (Copies of Checks from Bridgeview Bank payable to "Cash" endorsed by Debtor).

58.    Debtor has not produced any records tracking the use or whereabouts of this cash

## D. Tax Refund

59.    On November 2, 2015, Debtor deposited a tax refund from the State of Illinois dated 10/30/15 in the amount of $2,656.00.  Trial Ex. 41.

60.    Debtor deposited this check into an account owned not by Debtor, but owned by EPC Properties, LLC. Trial Ex. 41. (see deposit ticket).

61.    On November 4, 2015, Debtor deposited a federal tax refund in the amount of $6,016.00 into an account owned by Holland Pub, LLC. Trial Ex. 42.

62.    Debtor did not disclose the tax refunds until presented with documentary evidence during PNC's 2004 exam. Doc. 175, its Ex. 2 p. 132 ln. 9-18; 14-49 ln. 18 to p. 148 ln. 6.

63.    Debtor has not turned the funds from the two tax returns over to the trustee.

## IV. Expenses

6

64.    Debtor included two schedule Js in his bankruptcy filing. Trial Ex. 5 p. 5-9 (doc. 18).

65.    Debtor filed one schedule J for himself and one schedule J for his non-filing spouse. Trial Ex. 5 p. 5-9 (doc. 18).

66.    Debtor's wife's schedule J does not state the actual household expenses for Debtor and his wife. Trial Ex. 5 p. 7-8.

67.    Debtor's wife's schedule J contains the standard IRS expenses for line 4 (home expenses), line 7 (food and house supplies), and line 12 (transportation) rather than Debtor and his wife's actual expenses for these items. Trial Ex. 5 p. 7-8.

68.    Debtor's schedule J does not contain all actual household expenses for Debtor and his wife. Trial Ex. 5 p. 5-6.

69.    Neither of the schedule Js filed by Debtor disclose the mortgage payments for Debtor's Residence, the payment for Debtor's car, the amounts spent on expenses by Debtor and his wife every month using Debtor's two American Express cards, or the amounts spent on expenses by Debtor's wife using her various credit cards and Park Ridge Community Bank checking account. Trial Ex. 5 p. 5-8.

## A. Debtor's Residence

70.    UNCONTESTED - Debtor and his family have resided at the Residence since 2009. Doc. 175, its Ex. 3 p. 91 ln. 1.

71.    The Residence appraised for $1,846,000 in 2015. Trial Ex. 13.

72.    At the Relevant Time Bridgeview Bank held a junior mortgage against the Residence related to a Home Equity Line of Credit ("HELOC") in the original principal amount of $536,648.13 extended to Debtor and his wife with an account number ending in x23001 that Debtor did not disclose in his Schedules. Trial Ex. 16, 40.

73.    At the Relevant Time Bridgeview Bank had a first lien priority mortgage against the Residence related to a loan to Jody Libman ending in account number x10301. Trial Ex. 38-1, 38-4

74.    At the Relevant Time as set forth in bank records from Bridgeview Bank, the Four Curragh Bars and EPA, among others, made payments on Debtor's x23001 loan. Trial Ex. 14, 38-2.

75.    At the Relevant Time, the monthly payment on Debtor's HELOC x23001 loan was $3,175.66 per month. Trial Ex 14.

76. At the Relevant Time as set forth in bank records from Bridgeview Bank, the Four Curragh Bars and EPA, among others, made payments on Libman's x10301 loan. Trial Ex. 15, 38-1.

77. At the Relevant Time, the monthly payment on Libman's x10301 loan was $6,270.22  Trial Ex. 15.

78. Debtor did not list the expense for the HELOC x23001 loan secured by the junior mortgage on the Residence on either of the schedule Js he filed. Trial Ex. 5 p. 5-8

79. Debtor did not list the expense for Libman's x10301 loan related to the Residence on either of the schedule Js he filed. Trial Ex. 5 p. 5-8

80. Debtor did not list the payments made by the Four Curragh Bars for Debtor's HELOC x23001 loan or Libman's x10301 loan's as income on his Bankruptcy Schedules. Trial Ex. 5 p. 5-8.

## B. Debtor's Two American Express Cards

81. At the Relevant Time Debtor had at least two American Express cards in his name.  The first, ending in x4005 (previously & x3007); the second ending in x71002. Trial Ex. 16-19. Copies of the monthly statements for Debtor's cards x4005 and x71002 are attached hereto as Trial Ex. 17, 19.

82. For American Express card x4005 the statements show Debtor (or his wife) used this card for personal use. Trial Ex. 17 (airfare to Florida, purchases at Victoria Secret, Marianos, Target, Dicks Sporting Goods, Walgreens, and numerous restaurants).

83. For American Express card x 71002 the statements show Debtor used this card for personal use.  Trial Ex. 19 (showing airfare to Florida, airfare to Georgia (which includes tickets for Debtor's wife and children), airfare to Mexico, airfare to Texas (for Debtor and his son), numerous purchases in Florida and Mexico, purchases at Starbucks, gas stations, Google Games, ITunes, Walgreens, Dicks Sporting Goods, numerous restaurants, Marianos Grocery Store, Verizon store). See also Trial Ex. 64 where Debtor marked what he claims are the only personal expenses with a "P."

84. At the Relevant Time Debtor's wife was the primary user of card ending in x4005 which she used for personal use. Doc. 175, its Ex. 2 p. 51 ln. 11.

85. At the Relevant Time Debtor was the primary user of card ending in x71002 which he used for personal use. Doc. 175, its Ex. 2 p. 106 ln. 13 to p 107 ln 7.

86.     During the Relevant Time the Four Curragh Bars, among others, made monthly payments on Debtor's x4005 and x71002 American Express Cards as set forth in the records from American Express. Trial Exs. 16, 18 (documents from American Express showing payments from bank accounts and the first pages of certain bank accounts to confirm account numbers); Doc. 175, its Ex. 2 p 51 ln. 9-10; Ex. 2 p. 60 ln. 23 - p. 66 ln. 15.

87.     Debtor did not list the amounts he and his wife spent using the American Express cards on either of the schedule Js he filed.  Trial Ex. 5 p. 5-8.

88.     Debtor did Debtor did not list the amounts paid for the American Express cards as income on his bankruptcy schedules.  Trial Ex. 5 at 3, Trial Ex. 4 p. 18

89.     During the Relevant Time, Debtor used the x71002 American Express Card for at least $23,005.10 in personal purchases which averages to $1,917.10 per month using the items Debtor designated as "P" or admitted were personal during his deposition.  See Trial Ex. 64 where Debtor marked what he claims are the only personal expenses with a "P."  Debtor changed certain answers from B to P during his deposition on January 13, 2020.

90.     Adding charges for restaurants, gas, toll roads, and Starbucks (all of which Debtor marked as "B" to denote a business charge)  increases Debtor's monthly use of the x71002 American Express Card another  $873.59 for a total of $2,790.69 per month for personal use during the Relevant Time.  See Trial Ex. 64 where Debtor marked what he claims are the only personal expenses with a "P."

91.     Debtor did Debtor did not list the amounts paid for the American Express cards as income or expenses on his bankruptcy schedules.  Trial Ex. 5 at 3; Trial Ex. 4 p. 18.

## C. Debtor's Car

92.     During the Relevant Time, the Four Curragh Bars paid for 2015 Infinity Debtor used in the approximate amount of $600 per month. Doc. 175, its Ex. 2 p. 50 ln. 10; . SJ. Ex. 3 p. 37 ln. 16

93.     Debtor did not list these car payments as expenses or income on his bankruptcy schedules.  Trial Ex. 5 p. 5-8; Trial Ex. 5 p. 3; Trial Ex. 4 p. 18.

## D. Debtor's Wife's Credit Cards and Miscellaneous Household Expenses

94.     Debtor and his wife's actual expenses, including items such as car payments, credit card payments (which are used on a monthly basis to pay living expenses), and utilities are not listed on Debtor's schedule Js. Compare Ex. 52 PRCB 150-205 (monthly statements showing ACH payments for various expenses) to Trial Ex. 5 p. 5-8.

95.     In the Relevant Time, Debtor's wife paid for numerous household expenses,

including credit cards used to pay household expenses, using her Park Ridge Community Bank account ending in x9701. Trial Ex. 52 PRCB 150-205

96.     During the Relevant Time, Debtor's wife's Park Ridge Community Bank account shows monthly expenses averaging $2,310.82 for the Wife's credit cards, $725.52 for a U.S. Bank loan, $1,080.70 to dances studio, and $433.49 for Debtor's Park Ridge County Club membership. Trial Ex. 52 PRCB 150-205 (showing monthly ACH payments for credit cards and U.S. Bank loan, and monthly checks to Park Ridge County Club and Studio 22 High Tek for dance).

97.     These household expense paid from the PRCB account ending in x9701 are not listed on either of the schedule Js filed by Debtor. Trial Ex. 5 p. 5-8.

98.     Debtor did not disclose these expenses paid from the PRCB account ending in x9701to his attorney Kevin Benjamin.  Trial Ex. 5 p. 5-8.

99.     Debtor was aware of these expenses at the time he filed this bankruptcy.

## V. Edison Park Acquisition, LLC

A.  Undisclosed Funds Debtor and His Wife Received from EPA

100.    From January 1, 2013 to August 16, 2015, Debtor's Wife, Sharise Leongas, received at least $160,000 from EPA. Trial Ex. 52 PRCB 28, 29, 35, 37, 49, 50

101.    Debtor did not disclose the payments his wife received from EPA as income on his Bankruptcy Schedules.  Trial Ex. 4, 5.

102.    Proceeds from Bridgeview Bank's loan to EPA were used to pay a previous HELOC loan in Debtor and his wife's name from Bridgeview with an account ending in x6700 as well as a mortgage on Debtor's residence, account ending in x10301, on or about September 11, 2013.  Trial Ex. 15 p. BVB BK 3359 (showing loan payment amount of $6,046.77 in 2013), Trial Ex. 79 (showing monthly payments on x6700 in the amount of $3,233.99) Trial Ex. 78 (Bridgeview Bank Loan History for EPA loan showing advance of $6,046.77, and advance of $6,467.98 which is $3,233.99 multiplied by two); see also Trial Ex 90, 92, 93, 96.

103.    Debtor did disclose the payments EPA made on his loans as income on his bankruptcy schedules.  Trial Ex. 4 and 5.

B.  Debtor's Equitable Interest in EPA

104.    UNCONTESTED - Debtor owned an entity entitled PLL, LLC which obtained a loan from PNC's predecessor, National City Bank, N.A to purchase the Edison Park Real

10

Estate. On July 1, 2009, PNC filed a lawsuit seeking to foreclose its mortgage ("Foreclosure Litigation") against the Edison Park Real Estate. Trial Ex. 44.

105.   While the Foreclosure Litigation was pending, Debtor made arrangements for a third party short-term lender, BCL Capital Funding, LLC ("BCL" which is referred to in some of the exhibits as 'Barnett' or 'Barnett Capital') to purchase the Edison Park Real Estate at the judicial sale in connection with the Foreclosure Litigation whereby Debtor possessed the option to purchase the Property v from BCL within a few months.   Trial Ex. 72 p. 3, 73.

106.   On January 25, 2013, BCL purchased the Edison Park Real Estate. Doc. 175, its Ex. 27.

107.   Debtor, during his 2004 exam stated that he had nothing to do with BCL purchasing the Edison Park Real Estate.   Doc. 175, its Ex. 3 p. 165 ln. 20-22

108.   Debtor entered into a contract with BCL whereby Debtor obtained the right to purchase the Edison Park Real Estate. Trial Ex. 72 p. 3, 73.

109.   Debtor assisted Touhy in obtaining a loan from Bridgeview Bank for EPA to purchase the Edison Park Real Estate from BCL. Trial Exs. 23-24.

110.   Debtor corresponded with Bridgeview Bank regarding the loan for EPA to purchase the Edison Park Real Estate and regarding Touhy, including the emails attached hereto as Trial Exs. 23-24.

111.   Debtor obtained funds from friends and family in an aggregate amount exceeding $360,000 as a down payment on the Edison Park Real Estate for EPA's purchase. Trial Ex. 26, which is a chain of emails wherein (see August 19, 2013 3:58 PM email), Debtor tells BCL that as part of the EPA's purchase of the Property, he needs the contract to net out his earnest money so that he can pay back his family.

112.   On or about August 30, 2013, EPA purchased the Edison Park Real Estate from BCL. Trial Ex. 27 (settlement statement). The purchase funds came entirely from the approximate $363,200 Debtor borrowed from friends and family for the earnest money and the $2.3 million dollar loan from Bridgeview Bank, which Debtor arranged.   Trial Ex. 27; Trial Ex. 26 (emails where Debtor states he needs to re-pay his family for earnest money); Trial Ex 23 (Debtor telling Bridgeview that Touhy is on board).

113.   UNCONTESTED - On or about December 31, 2013 EPA sold the Edison Park Real Estate to an entity entitled EPC Properties, LLC ("EPC").   Trial Ex. 28 (settlement statement).

114.   EPC's purchase of the Edison Park Real Estate resulted in approximately $1.8 million in net proceeds being paid to EPA. Trial Ex. 28.

115.    On or about December 31, 2013 Touhy's firm received the approximate $1.8 million proceeds. Touhy initially deposited the funds into his law firm's client funds account ending in x0889. Trial Ex. 30.

116.    After payment of $366,000 for repayment of escrow money Debtor borrowed to facilitate BCL's purchase, payment of $75,000 to EPC and Holland Pub, and a few miscellaneous payment Touhy's firm subsequently transferred the remaining $1,313,605.97 from his firm's client accounts to EPA's account ending in x5460 at Belmont Bank. Trial Ex. 31 (ledger produced by Touhy) and Trial Ex. 32, which are bank account records for EPA's account ending in x5460.

117.    From there, nearly all of the remaining $1,313,605.97 was paid to people or entities related to Debtor as follows from May of 2014 to May of 2015:

> a. Debtor's Wife, Sharise Leongas, received at least **$160,000** from EPA since January of 2014. Trial Ex. 52 PRCB 28, 29, 35, 37, 49, 50.

> b. EPC received at least $310,924.53 from EPA.  Trail Ex. 32 at Belmont 163, 172, 173, 181, 182, 183, 185, 187, 190, 194, 195, 199, 323.

> c. Curragh Glen, LLC received $115,000. Trial Ex. 32 at Belmont 172, 176, 177, 178, 181, 182, 183, 185,191, 201.

> d. EPA paid at least $34,701.03 for the American Express Card in Debtor's name ending in x4005 and at least $227,875.98 for the American Express Card in Debtor's name ending in x1002. Trial Exs. 16,18.

118.    Debtor signed Touhy's name for many of the checks written from the x5460 account. Compare Trial Ex. 32 at 159 to checks written after December 2014 (Trial Ex. 32 at 190-99) and Debtor's signature on the last page of Trial Exs. 4 & 5; See also Trial Ex. 33, (Doc. 146-10) at 12 ¶ 25, 31-32 (Touhy admitting he authorized Debtor to sign checks).

119.    Debtor collected rent for the Edison Park Real Estate on behalf of EPA.  Trial Ex. 34.

120.    Debtor worked to obtain EPA's loan from Bridgeview Bank.  Trial Exs. 23, 24.

121.    Debtor handled payments on the EPA's Bridgeview Bank  Loan. Trial Exs. 24, 95.

122.   Debtor set up a checking account for EPA. Trial Ex. 24.

123.   During his 2004 exam,   Debtor stated that he had nothing to do with EPA purchasing the Edison Park Real Estate from BCL, nothing to do with EPA obtaining a loan for the purchase, and nothing to do with setting the sales price. Doc. 175, its Ex. 2 p. 167 ln. 7-12, P. 168 ln. 9-12.

124.   During his 2004 exam, Debtor stated he had 'no idea' why Touhy's firm and EPA paid money to EPC. Doc. 175, its Ex. 2  p. 128 ln. 12-14; p. 129 ln. 3-12; p. 130 ln. 23-p. 131 ln. 4.

125.   Touhy, (who is allegedly one of Debtor's attorneys) in an affidavit stated i) he retained Debtor to handle payment of funds from EPA to EPC and gave Debtor permission to write checks from the EPA account.  Trial Ex. 33 Doc. 146-10 at 12 ¶ 25,31-32.

## VI. Debtor's Residence

126.   Debtor took ownership of the Residence in 2009. Doc. 175, its Ex. 3 p. 91 ln. 1.

127.   Debtor arranged for a 'childhood friend' (Doc. 175, its Ex. 3 p. 96 ln. 6) Jodi Libman to purchase the Residence pursuant to a short sale and Libman purchased the Residence with a loan from Bridgeview Bank which Debtor assisted  Libman in procuring. Trial Ex. 35 (Debtor coordinating loan with Bridgeview Bank).

128.   While Libman allegedly owned the Residence, the Four Curragh Bars made monthly payments on Libman's loan from Bridgeview. Doc. 175, its Ex. 3 p. 98 ln. 13-16, p. 101 ln. 16 p. 102 ln. 1; see also Trial Ex. 15 (copies of checks from Bridgeview Bank).

129.   The lender, Bridgeview Bank went directly to Debtor when the payments on Libman's were past due. Trial Ex. 36, 98.

130.   Debtor personally handled the payment of Libman's loan.  Trial Ex. 91.

131.   On or about June 5, 2015 Libman quit claimed the Residence to Judith Iovino (Debtor's mother-in-law) as trustee for the 921 South Broadway Land Trust. Debtor claims EGIO Consulting LLC – Series G, owned by Debtor's minor children, is the beneficiary of this trust. Doc. 175, its Ex. 3 p. 99 ln. 11 – p. 100 ln. 11.

132.   The 921 South Broadway real estate was not listed as an asset in Debtor's child's 2018 FAFSA application.  Trial Ex. 62, 63.

133.   On May 6, 2016, Debtor's wife and Debtor's friend/attorney Glenn Udell obtained a $1,325,852.47 loan from Bridgeview to pay off Libman's loan, which loan was

13

secured by a mortgage on the Residence. Trial Ex. 37.

134.    The proceeds of this 2016 loan also paid off Debtor's $536,648.13 HELOC note owed to Bridgeview. Ex. 37 (Bridgeview Bank loan approval referencing refinance of x23001 and x10301) (for proof that x10301 and 23001 are Debtor's and Libman's, see the account numbers listed on the second page of the Change in Terms and Note in Trial Exs. 38-1 to 38-4).

135.    Debtor failed to list the Residence, or mortgage payments related to the Residence, on his bankruptcy schedules.  Trial Exs. 4,5.

## VII. Discovery

136.    PNC's 2004 subpoena for document production to Debtor required production of, *inter alia*, Debtor's emails related to his Residence, the trust which took ownership of his residence, bank accounts, money paid for Debtor's living expenses, automobiles, insurance, gifts, wills and trusts, EPA's purchase of the Edison Park Real Estate, and Debtor's assets. Doc. 175, its Ex. 41.

137.    Debtor did not produce emails but instead provided an affidavit of completeness attesting that had produced all required documents on April 27, 2016. Trial Ex. 39.

138.    During Debtor's 2004 exam he stated he produced all of the emails he possessed. Doc. 175, its Ex. 2 p. 17 ln. 19-24.

139.    During PNC's 2004 exam Debtor stated that he used email and possibly used email related to his assets and financial affairs. Doc. 175, its Ex. 2 p. 13-162.

140.    Debtor produced 1311 pages of emails dating back to 2015 on or about October 9, 2017. Stamped Leongas 00001-01311.

141.    With leave of Court PNC issued 2004 subpoenas to Bridgeview Bank, Belmont Bank, Park Ridge Community Bank, and American Express.  Doc. 27,42.

142.    In response to PNC's subpoenas to Bridgeview Bank, Belmont Bank, Park Ridge Community Bank, and American Express , i) Debtor filed an objection (doc. 36) and ii) Debtor's wife and the Four Curragh Bars filed a motion to quash attempting to prevent PNC from obtaining these records from Bridgeview Bank, Belmont Bank, Park Ridge Community Bank.  Doc. 53.

## VIII Miscellaneous Statements

143.    In response to PNC's question as to how much money Debtor charges per month to the two American Express Debtor stated "I have no idea."  Doc. 175, its Ex. 2, p.

75 ln. 6-9.

144.    During the initial 341 meeting Debtor stated he didn't know whether Libman paid cash for the house. Doc. 175, its Ex. 37; Ex. 50 p. 11 ln. 23.

145.    During the initial 341 meeting Debtor stated he didn't know who the beneficiaries are of the trust that received title to 921 S Broadway from Libman. Doc. 175, its Ex. 3 p. 99 ln. 12 – p. 101 ln. 6; Ex. 50 p. 22 ln. 25

## VIII. Kevin Benjamin

146.    Debtor requested attorney Kevin Benjamin ("Benjamin") file bankruptcy for Debtor.

147.    Debtor reviewed all of the bankruptcy schedules for accuracy prior to them being filed. Doc. 175, its Ex. 3 p. 10 ln. 1-7; Ex. 50 p. 5 ln. 21-24.

148.    Prior to filing Debtor's bankruptcy, Benjamin provided Debtor with a document entitled "Benjamin Rules for Filing Bankruptcy" stamped (Trial Ex. 53) which Debtor electronically signed.

149.    Prior to filing Debtor's bankruptcy, Benjamin provided Debtor with a document entitled "Chapter 7 Process Information" (Trial Ex. 54) which Debtor electronically signed.

150.    Prior to filing Debtor's bankruptcy, Benjamin provided Debtor with a document entitled "Benjamin Debt Assistance Initial Consultation" (Trial Ex. 55) which Debtor electronically signed.

151.    Prior to filing Debtor's bankruptcy, Benjamin sent Debtor a link to an online Questionnaire (Ex. 56) (hereafter Questionnaire") through the company My Case regarding Debtor's income, assets, and expenses.

152.    Debtor provided answers to the Questionnaire to Benjamin on or about August 13, 2015. Ex. 56.

153.    In his answer the Questionnaire, Debtor did not list any employment, spouse employment, business income, contributions to household expenses, residences, expected tax refunds, or credit cards. Trial Ex. 56. P. KB 102-114.

154.    On September 20, 2015 at 4:04 P.M. Benjamin emailed Debtor and stated that Debtor had not yet provided any of Debtor's household expenses despite requesting the information in the Questionnaire and in several subsequent correspondences. Trail Ex. 69.

155.    On September 20, 2015 at 8:40 Debtor emailed Benjamin a response to

Benjamin's 4:04 P.M. email in which Debtor fails to list numerous expenses of his household including car payments, credit card payments (which include living expenses), utilities, and insurance.  Trial Ex. 70.

156.   In Debtor's September 20, 2015 8:40 P.M. email to Benjamin, Debtor states that Jody [Libman] owns Debtor's house and that Libman deeded it into a trust. Trial Ex. 70.

157.   Benjamin requested all actual household expenses from Debtor. 9/20/15 email and Questionnaire. Trial Ex. 69.

158.   On September 20, 2015 Debtor told Benjamin that Libman owned Debtor's residence through a trust.  Trial Ex. 70.

## IX. Loans

159.   No written agreements exist for the purported loans from the Four Curragh Bars to Debtor and his family.  Doc. 175, its Ex. 2 p. 67 ln. 1-13; Doc. 198, its Ex. 66 p. 79 ln. 4-16, p. 80 ln. 16-23, p. 81 ln. 11-20, p. 90 ln. 24 to p. 91 ln. 24.

160.   There is no maturity date, interest rate, or repayment terms for the purported loans from the Four Curragh Bars to Debtor and his family.  Doc. 175, its Ex. 2 p. 67 ln. 1-13; Doc. 198, its Ex. 66 p. 79 ln. 4-16, p. 80 ln. 16-23, p. 81 ln. 11-20, p. 90 ln. 24 to p. 91 ln. 24.

161.   On its 2015 balance sheet Skokie Curragh, LLC listed $7,007.28 in accounts receivable owed by Debtor. Trial Ex. 65. P. 3.

162.   On its 2015 balance sheet the 'Curragh Edison Park' listed $7,026.50 in accounts receivable owed by Debtor. Trial Ex. 67 p. 3.

163.   On its 2015 balance sheet Holland Pub, LLC listed $38,032.96 in accounts receivable owed by Debtor. Trial Ex. 67 p. 4.

164.   On its 2015 balance sheet EPC Properties, LLC listed zero in accounts receivable owed by Debtor. Trial Ex. 68 p. 4.

165.   Debtor has produced no records depicting any repayment by him of any "loans" made to him by the Curragh bars.

166.   Debtor's sister Sophia does not expect any "loans" made by the Curragh bars to Paul to be repaid.  Doc. 198, its Ex. 66 p. 79 ln. 4-16, p. 80 ln. 16-23, p. 81 ln. 11-20, p. 90 ln. 24 to p. 91 ln. 24.

## IX.   Stipulations as to Authenticity of Certain Documents

167.    The checks included in Trial Exhibit 14 are true and accurate copies of checks paid to Bridgeview Bank and applied to the HELOC loan to Debtor and his wife.

168.    The checks included in Trial Exhibit 15 are true and accurate copies of checks paid to Bridgeview Bank and applied to the first priority mortgage loan made to Jody Libman.

169.    Trial Exhibit 16 is a true and accurate summary of the monthly American Express Payment Totals produced by Amex and One Page Bank Account Statements to Match Account numbers for Amex card x4005.

170.    The documents in Trial Exhibit 17 are true and accurate copies of Statements from American Express for Card x4005 from August of 2014 to August of 2015.

171.    Trial Exhibit 18 is a true and accurate summary of the American Express Payment Totals produced by Amex and One Page Bank Account Statements to Match Account numbers for Amex card x1002.

172.    The documents in Trial Exhibit 19 are true and accurate copies of Statements from American Express for Card x4005 from September 2013 to August of 2015.

173.    The documents in Trial Exhibit 32 are true and accurate copies of the Belmont Bank Account Statements for EPA Account ending in x5460.

174.    The documents in Trial Exhibit 40 are true and accurate copies of checks from EPC Properties, LLC (Bridgeview Bank Account No. x1301) and Curragh Glenn, LLC (Triumph Comm. Bank) cashed by Debtor.

175.    The documents in Trial Exhibit 52 are true and accurate copies of Park Ridge Community Bank statements, checks and debits from PRCB Account ending in 9701 for 2013 to 2015.

176.    Trial Exhibit 78 is a true and accurate Bridgeview Bank Group payment history depicting payments applied to, and advances from, the Jody Libman Loan ending in x7500.

177.    Trial Exhibit 79 contains true and accurate copies of the payments applied to the Bridgeview Bank Group HELOC to Paul and Sharise's ending in x6700.

## DEFENDANT'S STATEMENT OF CONTESTED AND UNCONTESTED FACTS

177. UNCONTESTED.  On August 16, 2015 ("Petition Date"), the Debtor filed a voluntary petition for relief under chapter 7 of title 11 of the United States Code by the filing of a skeletal petition ("Bankruptcy Code"). Ex. 1.

178. The skeletal petition was filed because the Debtor's attorney was leaving for an extended vacation.

179. Prior to the Petition Date, the Debtor met with his attorney and disclosed that his sisters paid his credit card bills as well as the mortgage as de facto rent on his residence, which was owned at the time by a trust of which his children were the beneficiaries.

180. The Debtor provided his attorney information regarding his detailed expenses, but relied upon his attorney's advice that the appropriate practice would be to file using the standard IRS deductions for a household of 5 people rather than actual expenses.

181. Indeed, until recently, the Debtor did not fully understand or appreciate that the attorney's methodology on Schedule J might not be appropriate or that a creditor might argue this method of disclosing expenses suggested a kind of intentional misconduct.

182. UNCONTESTED. On September 21, 2015 the Debtor's attorney filed Schedules I and J. Ex. 10

183. Regardless, the Debtor, a non-attorney, reasonably relied on his attorney for his advice regarding such disclosures.

184. The Debtor made candid and substantial disclosures in his schedules consistent with his understanding of what he understood to be the required disclosures based on his consultation with and the advice of his attorney.

185. On the topic of his income, Paul informed his attorney that he had not received a paycheck from any business for many years and that other than his wife's paychecks, the sole source of support for the Debtor and his family was in the form of loans and assistance from his sisters and their businesses who paid his credit cards and housing related expenses. Ex. 38.

186. While the Debtor had historically provided for his family through his efforts as a real estate investor and developer until the foreclosure crisis, since then, he has mostly subsisted on assistance in the form of loans from his family and Holland Pub and the kindness of his friends.

187. The loans received mostly from his family's businesses were actually booked as loans on their books and tax records which through 2015 Exs. 34, 35, 36, & 37.

188. Further, business entities were disclosed as a creditors on the Debtor's schedules. Ex. 7.

189. The Debtor similarly reasonably relied on his attorney's advice with respect to Schedule I disclosures.

190. The Debtor's attorney attributed the corresponding expenses on Schedule J as follows: $190.00 for his wife's life insurance, $1,503.16 for health insurance, $391.66 for

18

vehicle insurance, and $432.75 for Paul's life insurance for a gross amount of $2,517.57 as reflected on the Debtor's Schedule I as assistance from his sister and Holland Pub. Ex. 7.

191.  The Debtor's attorney failed to look at the banking and credit card statements the Debtor provided.

192.  The Debtor made extensive and accurate disclosures in the petition and schedules related to his extensive business and real estate dealings both as of the Petition Date and the relevant pre-petition periods.

193.  He listed the Broadway property as the location where he resided and testified extensively about all of the above matters during a 3 hour 341 meeting of creditors conducted by his case trustee, Richard Mason. Ex. 1.

194.  Prior to the meeting the Debtor and his attorney provided Mr. Mason all of the additional documents that the trustee had requested. Ex.17.

195.  The trustee conducted an extensive examination and focused on the particular disclosures spending almost the entire meeting reviewing the Debtor's business and personal financial activities.

196. UNCONTESTED. The trustee did not seek to extend the discharge deadline, call the Debtor back in for further testimony, or file any avoidance actions. Ex. 14.

197. UNCONTESTED. The trustee filed a no asset report. Ex. 14.

198. UNCONTESTED. The Debtor's previously affiliated companies that owned the Edison Park property, PLL, LLC and the original operating entity at that location, EP Curragh, LLC filed separate corporate chapter 7 bankruptcies as Case nos. 15-27969 and 15-14710 respectively. R.56 Ex.  Each ended with no litigation being filed. No asset reports were issued and the cases were closed. Exs. 15 & 16

199.  The Debtor's dispute with PNC dates back to a personal guaranty that the Debtor made in connection with a loan from National City Bank in 2008 under which PLL, LLC was the borrower for the property located at 6701-09 North Northwest Hwy., Edison Park, Illinois ("Edison Park"). Ex. 18 & 19.

200.  National City was failing or had failed as part of the subprime mortgage crisis and mortgage meltdown and as of October 24, 2008, National City was sold to PNC.

201.  One year after making the PLL loan for $4 million PNC notified PLL and Paul that it was calling its loan for over $4 million based upon the default of another unrelated loan that Paul had guaranteed.  PNC stopped accepting monthly payments, accelerated the payments and declared a default.

202. UNCONTESTED. Ultimately, the Edison Park property went to judicial sale. Ex. 20.

203. UNCONTESTED. Despite having over $4 million to credit bid, PNC credit bid only $1.32 million and was outbid by Barnett Capital Funding, LLC for $1.34 million. Ex. 20.

204. Upset that the state court confirmed the judicial sale over PNC's own objection to its sale, PNC had its receiver, Dan Hyman, illegally lock EP Curragh, LLC (the operating entity owned by Paul's sister) out of the building causing the business to shut down for almost a month.

205. Eventually, the operating entity prevailed in the eviction proceedings in state court and was returned possession of the premises.

206. The Debtor made extensive disclosures in his petition and schedules. Exs. 1, 7, 10 & 12.

207. PNC does not take issue with any of the disclosed information, but rather bases its objections to discharge on claimed omissions that they assert the Debtor should have made.

208. When the Debtor consulted with his attorney prior to filing the bankruptcy income and expense schedules, he advised him of the various arrangements with his family that in order to pay bills and support his household expenses, that his family and the family's businesses were making loans to the Debtor, his wife and his children for their support. Ex. 38.

209. In consultation with his attorney, it was determined that loans were not income and not reportable on the Debtor's Schedule I.

210. As a small sample, the Debtor has reviewed in detail the statements for the AMEX account ending 71002 in the name of Irish Spirits, LLC for the 6 month period preceding, during and shortly after the filing of the bankruptcy. Based upon this random selection it would appear the total "personal" charges of the Debtor were less than 4% of the total, but more importantly irregular. Using the average of the six months immediately prior to filing the case, the personal usage on the AMEX card ending 71002 is approximately $695 per month not $27,000.

211. On July 18, 2014, a check from EPA was mistakenly directed to the Debtor's spouse in the amount of $125,000.00 and deposited into her account at PRCB. Ex. 23.

212. On July 22, 2014, Ms. Leongas wrote a corresponding check for $100,000.00 to EPC Properties – the party to whom the funds actually belonged and a company owned by the Debtor's sister (not the Debtor). Ex. 23.

213. Second, there was a deposit in the amount of $64,258.25 on November 12, 2014 that represented insurance proceeds to make repairs for damage to the Residence. Ex. 24.

214. UNCONTESTED. PNC admits in its foreclosure complaint that PLL – not Paul - was the owner of the Edison Park property.(Ex. 18 ¶3(k))

215. Paul held only a membership and management interest in PLL – which was never sold, transferred or assigned – rather, the focus of PNC's arguments are related to the ownership and subsequent transfers of the Edison Park property owned by PLL.

216. The Property at 921 Broadway, Park Ridge, Illinois was in foreclosure as of was in foreclosure and worth significantly less than the value of the liens against it as evidenced by Bank of America's acceptance of $800,000 as a short sale on a $1.6 million loan. Exs. 25 & 27.

217    The property was owned in tenancy by the entirety with the Debtor's wife and exempt from the collection activities of PNC or any of the Debtor's creditors. Ex. 26.

218. UNCONTESTED. On August 23, 2011, the Debtor's lender, Bank of America approved a short sale of the Residence to Jody Libman a friend of the family. Ex. 27.

219. UNCONTESTED. On September 23, 2011, the sale of the Residence to Libman closed. Ex. 28.

220. On June 5, 2015, Libman transferred title to the property which he was the sole title holder to a trust naming Judith Iovino as trustee and Paul's children as the beneficiaries. Ex. 29.

221. On May 6, 2016, the Debtor's wife paid off the loan on the Broadway property.

Respectfully submitted,

PNC Bank, National Association,

By:   s/ John F. Sullivan
One of Its Attorneys
Matthew L. Hendricksen, Esq. (ARDC #6296720)
John F. Sullivan (ARDC #6206900)
Plunkett Cooney, P.C
221 N. LaSalle Street, Suite 1550
Chicago, IL 60601
Telephone: (312) 670-6900
mhendricksen@plunkettcooney.com

Paul L. Leongas,

By: /s/ Konstantine Sparagis
One of his Attorneys
Konstantine Sparagis (6256702)
Law Offices of Konstantine Sparagis
900 W. Jackson, Suite 4E
Chicago, IL 60607
(312) 753-6956
gus@konstantinelaw.com

21

Open.26645.73625.23674974-1

**EXHIBIT 2**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

IN RE:

Paul L. Leongas

                       Debtor

|  |  |
|---|---|
| IN RE:<br><br>Paul L. Leongas<br><br>    Debtor<br><br>---<br><br>PNC Bank, N.A.,<br><br>    Plaintiff,<br><br>v.<br><br>Paul L. Leongas,<br><br>    Defendant. | Chapter 7<br><br>15-B-27967<br><br>The Honorable Judge<br>Janet S. Baer<br><br><br>Adversary Proceeding No.<br>16-00489 |

## PNC BANK, N.A'S WITNESS LIST

NOW COMES PNC Bank, N.A., ("PNC") by and through its attorneys Plunkett Cooney PC, and for discloses the following list of persons it may call for testimony during trial of this adversary proceeding.

    1.    Paul L. Leongas, Debtor, whose address is 921 S. Broadway Ave., Park Ridge, Illinois 60068.

    Mr. Leongas will be called as an adverse witness during PNC's case in chief. It is expect that Debtor will testify consistently with the way he testified in his 341 meeting of creditors, 2004 examination and deposition in this adversary proceeding. PNC expects to elicit testimony from Debtor about his assets, income, liabilities, livelihood, employment, businesses pursuits, bankruptcy schedules and summaries, household expenses, personal and business lending relationships with Bridgeview Bank, correspondence and communications, contracts, residence, authority to sign checks for various businesses, issuance of checks on behalf of various businesses to his wife, or businesses owned by his family members, expenses paid by family members' businesses for personal mortgage expenses, credit cards, automobile leases, insurance, accounting for purported loans Debtor claims to have received, PNC's judgments against Debtor, PNC's supplementary proceedings involving Debtor, Debtor's affirmative defenses and communications with bankruptcy counsel and facts related to PNC's adversary complaint. Debtor may be examined about his ownership and operation of PLL, LLC ("PLL"), PLL's income, expenses operations, tax returns, bankruptcy and dissolution. Debtor may be examined about his collection of rent checks from tenants at 6701-6709 N. Northwest Highway in Chicago, Illinois from 2011 through 2013 and the

disposition of those funds. Debtor may also be examined about his discovery responses and prior testimony.

Sharise Leongas (Debtor's wife), whose address is 921 S. Broadway Ave., Park Ridge, Illinois 60068.

Mrs. Leongas may be called as witness identified with an adverse party, the Debtor, during PNC's case in chief. It is expect that Ms. Leongas will testify consistently with the way she testified in her deposition in this adversary proceeding. PNC expects to elicit testimony from Ms. Leongas about Debtor's assets, income, liabilities, livelihood, employment, businesses pursuits, bankruptcy schedules and summaries, household expenses, personal and business lending relationships with Bridgeview Bank, residence, authority to sign checks for various businesses, issuance of checks on behalf of various businesses to Ms. Leongas, checks drawn on accounts owned by various businesses paid to Ms. Leongas or "cash" deposited into Ms. Leongas' account at Park Ridge Community Bank, expenses paid by family members' businesses or others for the Leongas' personal mortgage expenses, credit cards, automobile leases, insurance, Ms. Leongas' asserted employment, salary and income, payments of personal household expenses, PNC's judgments against Debtor, and facts related to PNC's adversary complaint.

Marc A. Palmer, Vice President, PNC Bank, National Association, 411 E Wisconsin Ave, Milwaukee, WI 53202.

Mr. Palmer may be called as a witness as to the amount of Debtor's indebtedness to PNC and that Debtor has not paid any amounts of the judgments entered against him and in PNC's favor.

Kimberly Jung, Vice President, First Midwest Bank, 4753 N. Broadway Chicago, IL 60640, 773.989.5728.

Ms. Jung may be called as a witness to authenticate documents produced by her former employer, Bridgeview Bank, pursuant to subpoena, such as bank statements, loan documents, loan payment histories, email and other correspondence with Debtor or third parties on Debtor's behalf, lending relationships with debtor, his wife, debtor's businesses, debtor's family members' businesses, Jung's knowledge of Debtor's business pursuits, lending relationships with Bridgeview Bank, business bankruptcies, attempts to avoid default and foreclosure of loans on which Debtor was an obligor, Debtor's and his family members' involvement in efforts to acquire the properties commonly known as 921 S. Broadway Ave., Park Ridge, Illinois and 6701-09 N. Northwest Highway, Chicago, Illinois, appraisals of those properties, transfers of assets previously owned by Debtor into a trust whose ultimate beneficiaries are Debtor's children,

mortgage payments remitted by or on Debtor's behalf to Bridgeview Bank for mortgages securing loans to acquire 921 S. Broadway, Park Ridge, Illinois, loans made to be used as earnest money to acquire 921 S. Broadway, Park Ridge, Illinois, funds from Edison Park Acquisition, LLC that were applied to mortgage loan indebtedness of Debtor or Jody Libman related to the 921 S. Broadway residence.

Kevin Benjamin, whose last known address is 1016 W. Jackson Blvd., Chicago, Illinois 60607

Mr. Benjamin may be called as a witness and examined about documents Debtor provided him, Documents Debtor did not provide him, communications with Debtor, preparation of Debtor's bankruptcy schedules, Debtor's assets, income, liabilities, household expenses, payments received from family members' businesses. It is anticipated Benjamin will testify consistently with his deposition in this adversary proceeding.

Dan Touhy, whose last known address is 225 West Wacker Drive, Suite 1600, Chicago, Illinois 60606.

Mr. Touhy may be called for testimony about his acquisition of Edison Park Acquisition LLC ("EPA"); EPA's acquisition of 6701-09 N. Northwest Highway, Chicago; Debtor's involvement in negotiations for EPA's purchase of that property; EPA's engagement of Debtor to help manage and develop that property; EPA's sale of that property to a business controlled by Debtor's sister; Debtor's authorization to sign checks on EPA's behalf; Debtor's issuance of checks drawn on EPA's accounts to Debtor's family members, their businesses or Debtor's creditors; Touhy's knowledge of PNC's supplementary proceedings to enforce its judgments against Debtor; Touhy's removal of Debtor's authority to sign checks from EPA's accounts; $1.8 Million of net proceeds EPA received from the sale of 6701-09 N. Northwest Highway, Chicago that was deposited into Touhy's law firm's IOLTA account; how that $1.8 Million was spent.

Sophia Leongas, whose last known address is 212 Portchester Rd., Holland, Michigan 49424.

Ms. Leongas may be called for testimony about the ownership of the four Curragh pubs and the entities that own the real estate where those pubs are located; services Debtor renders for those businesses; payments made by those entities to or on behalf of Debtor; accounting for payments made by those entities to or on behalf of Debtor; the terms of any alleged "loans" made by those entities to or on behalf of Debtor; whether interest is charged for any alleged loans to Debtor; whether any alleged loans to Debtor are evidenced by any promissory notes; the maturity dates of any alleged loan made by those entities to or for benefit of Debtor; whether Debtor has repaid any portion of alleged loans made by those

entities to or on behalf of Debtor; Sophia may be examined about her or entities she controls' prior discovery/citation responses and testimony under oath.

Jody Libman, 2007 W. Montrose Avenue, Chicago, IL 60618.

PNC may call Mr. Libman as a witness for examination about his acquisition and subsequent sale of 921 S. Broadway, Park Ridge, Illinois, agreements he had with Debtor about that property, loans he acquired and renewed through Bridgeview Bank Group secured by a mortgage on that property, a home equity line of credit Debtor and his wife had secured by a mortgage on that property between 2013 and 2016, loan payments made to Bridgeview Bank Group on Libman's loan and Debtor's home equity line of credit between 2013 and 2016, insurance claims related to that property, disposition of insurance claim payments related to that property, continued occupancy of that property by Debtor and his family during Libman's ownership of that property and that Debtor's family paid Libman no rent during the duration of their occupancy.

Keepers of Records: In the absence of suitable stipulations as to authenticity of documents produced to PNC by third parties pursuant to subpoenas or citations in this or related legal proceedings and subsequently provided to Defendant by PNC, PNC may call keepers of records to authenticate documents their institutions prepared, maintained in the ordinary course of business or produced in response to subpoenas or citations to discover assets:

a. Belmont Bank and Trust, 8250 W. Belmont Avenue, Chicago, Illinois 60634. Bank statements and cancelled checks for account held by Edison Park Acquisition, LLC and persons authorized to make transactions involving that account.

b. Appraisal Research Counselors, n/k/a Integra Realty Resources, 400 E. Randolph, Suite 715, Chicago, Illinois 60601. Appraisals conducted for Bridgeview Bank Group of 921 S. Broadway, Park Ridge, Illinois produced at BVB_BK000076.

c. American Express, 43 Butterfield Circle, El Paso, TX 79906. Credit card statements and monthly summaries produced pursuant to subpoena for credit cards Debtor or his wife used between September 2013 and August, 2015.

d. Park Ridge Community Bank, 626 West Talcott, Park Ridge, IL 60068. Bank statements, cancelled checks, deposit activity for account ending in 9701 owned by Sharise Leongas.

e. Bridgeview Bank Group, n/k/a First Midwest Bank, 4753 N. Broadway Chicago, IL 60640. Records produced pursuant to subpoena or citation in this or related proceedings.

PNC reserves the right to call any person Debtor calls as a witness and to supplement this witness list at any time prior to the deadline for submitting it pursuant to the final trial order entered in these proceedings.

Date:   February 11, 2020.

Respectfully submitted by:

PNC Bank, N.A.


By: /s/ *John F. Sullivan*
        One of its Attorneys

John F. Sullivan
ARDC No. 6205900
PLUNKETT COONEY, PC
221 N. LaSalle Street, Suite 1550
Chicago, Illinois 60601
(312) 670-6900


Open.26645.73625.23592005-2

# EXHIBIT 3

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|                            |     |                          |
|----------------------------|-----|--------------------------|
| In re                      | )   | Chapter 7                |
|                            | )   |                          |
| PAUL L. LEONGAS,           | )   | Case No. 15 B 27967      |
|                            | )   |                          |
|     Debtor. | )   | Hon. Janet S. Baer       |
|                            | )   |                          |
| PNC BANK, N.A.,            | )   |                          |
|     Plaintiff, | )   |                          |
|                            | )   | Adversary No.: 16 A 489  |
|    v.       | )   |                          |
|                            | )   |                          |
| PAUL L. LEONGAS            | )   |                          |
|     Defendant. | )   |                          |
|                            | )   |                          |

## DEFENDANT'S WITNESS LIST

Now comes the Defendant, Paul Leongas, by and through his attorneys, Konstantine Sparagis, Lou Karnezis, and J. Kevin Benjamin, and disclosed the following persons that he may call as witnesses at trial in the above matter:

1. Paul L. Leongas, Debtor, whose address is 921 S. Broadway Ave., Park Ridge, Illinois 60068.

   Mr. Leongas may be called as a witness during Defendant's case in chief. It is expected that Mr. Leongas will testify regarding the pre-petition events from the foreclosure of the Edison Park property through and following the filing of the petition in the underlying bankruptcy regarding his assets and liabilities, income and expenses and the relevant disclosures pertaining to his filed petition.

2. Kevin Benjamin whose address is 1016 W. Jackson Blvd, Chicago, Illinois 60607.

   Mr. Benjamin may be called as a witness during the Defendant's case in chief. It is expected that Mr. Benjamin will testify regarding the pre-petition events from the through and following the filing of the petition in the underlying bankruptcy regarding his practice and procedures in preparing the Defendants bankruptcy petition including the methodology employed in disclosing the Defendant's assets and liabilities, income and expenses and the relevant disclosures pertaining to the filed petition.

3. Dan Touhy, whose address is 225 West Wacker Drive, Suite 1600, Chicago, Illinois 60606.

Mr. Touhy may be called to testify as a witness during the Defendant's case in chief. It is expected that Mr. Touhy will testify regarding his interest in Edison Park Acquisition, LLC and that entity's acquisition, operation and subsequent sale of the Edison Park Property.

4. Glen Udell, whose address is 225 W. Illinois St., Chicago, Illinois 60654.

Mr. Udell may be called to testify in Defendant's case in chief. It is expected that Mr. Udell will testify regarding the various underlying foreclosures, communications and discussions with PNC Bank, transactions related to the Edison Park Property and the residential property located at 921 Broadway, Park Ridge, Illinois.

Defendant reserves the right to call any witness named as a witness by Plaintiff as witness in its case in chief.

Respectfully submitted,
Paul Leongas

By: /s/ Konstantine Sparagis
One of his Attorneys

Konstantine Sparagis (6256702)
Law Offices of Konstantine Sparagis
900 W. Jackson Blvd., Ste. 4E
Chicago, IL 60607
PH: 312-753-6956
FX: 866-333-1840
gus@konstantinelaw.com

**EXHIBIT 4**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

IN RE:

Paul L. Leongas

                              Debtor                Chapter 7

_____                15-B-27967

PNC Bank, N.A.,                                     The Honorable Judge
                                                    Janet S. Baer
                              Plaintiff,

         v.                                         Adversary Proceeding No.
                                                    16-00489
Paul L. Leongas,

                              Defendant.

## PNC BANK, N.A.'S LIST OF EXHIBITS

PNC Bank N.A. ("PNC"), through its attorneys, Plunkett Cooney PC, hereby submits the following list of exhibits:

| Exhibit | Description | Offered | Objection | Admitted |
|---|---|---|---|---|
| Exhibit 1 (S.J. Ex. 1) | Debtor's Income and Assert Answer from 735 ILCS 5/2-1402 Citation | | FRE 401 – Relevance; 403 - Prejudice | |
| Exhibit 2 (BVB_BK004900) | Debtor email to Bridgeview re deposit made to wife's account that hasn't cleared yet so hold mortgage checks. | | | |
| Exhibit 3 (BVB_BK004912-13) | Bridgeview email and payoff letter for EPA loan X7500 | | FRE 802 – Hearsay; 901-902 Foundation; 401 – Relevance; 403 - Prejudice | |

| | | | | |
|---|---|---|---|---|
| Exhibit 4 (S.J. Ex. 6) | Doc. 16, Debtor's Bankruptcy Schedules | | | |
| Exhibit 5 (S.J. Ex. 7) | Doc. 18, Summary of Schedules | | | |
| Exhibit 6 (S.J. Ex. 8) | Curragh Website Printout "Who We Are" printed 12/23/15 | | FRE 802 – Hearsay; 901-902 Foundation; 401 – Relevance; 403 - Prejudice | |
| Exhibit 7 (S.J. Ex. 9) | Curragh Website Press Release dated 2/17/15 and printed 1/7/16 | | FRE 802 – Hearsay; 901-902 Foundation; 401 – Relevance; 403 - Prejudice | |
| Group Exhibit 8 (S.J. Ex. 10) | Curragh Liquor License Renewals | | FRE 802 – Hearsay; 901-902 Foundation; 401 – Relevance; 403 - Prejudice | |
| Exhibit 9 (S.J. Ex. 11) | Debtor's Facebook Post stating he has three bars | | 401 – Relevance; 403 - Prejudice | |
| Exhibit 10 (S.J. Ex. 12) | Debtor's LinkedIn Page printed 1/6/16 | | 401 – Relevance; 403 - Prejudice | |
| Exhibit 11 (S.J. Ex. 13) | 2013 Affidavit of Debtor | | 401 – Relevance; 403 - Prejudice | |

| | | | | |
|---|---|---|---|---|
| Exhibit 12 (S.J. Ex. 14) | Curragh Website listing Four Curragh Bar locations printed 3/21/16 | | | |
| Exhibit 13 | 6/19/15 Appraisal for Bridgeview Bank of 921 S. Broadway, Park Ridge, Illinois. | | FRE 802 – Hearsay; 901-902 Foundation ; 401 – Relevance; 403 – Prejudice; FRE 702 – Improper Expert Opinion | |
| Exhibit 14 (S.J. Ex. 16) | Copies of Checks from Bridgeview Bank re payments on Debtor's HELOC x23001 | | FRE 802 – Hearsay; 901-902 Foundation | |
| Exhibit 15 (S.J. Ex. 17) | Copies of Checks from Bridgeview re payments upon Mortgage on Debtor's Residence, x10301. | | FRE 802 – Hearsay; 901-902 Foundation | |
| Group Exhibit 16 (S.J. Ex. 18) | American Express Payment Totals produced by Amex and One Page Bank Account Statements to Match Account numbers for Amex card x4005 | | FRE 802 – Hearsay; 901-902 Foundation ; 401 – Relevance; 403 – Prejudice; | |
| Exhibit 17 (S.J. Ex. 19) | August of 2014 to August of 2015 Statements from American Express for Card x4005 | | | |

3

| | | | | |
|---|---|---|---|---|
| Exhibit 18 (S.J. Ex. 20) | American Express Payment Totals produced by Amex and One Page Bank Account Statements to Match Account numbers for Amex card x1002 | | FRE 802 – Hearsay; 901-902 Foundation ; 401 – Relevance; 403 – Prejudice; | |
| Exhibit 19 (S.J. Ex. 21) | Sept. of 2013 to August of 2015 Statements from American Express for Card x1002 | | FRE 802 – Hearsay; 901-902 Foundation ; 401 – Relevance; 403 – Prejudice; | |
| Exhibit 20 (BVB_BK004890) | Bridgeview email demanding June and July past due HELOC payments and requesting to pull from one of Debtor's accounts. | | FRE 802 – Hearsay; 901-902 Foundation | |
| Exhibit 21 (S.J. Ex. 23) | 2/17/15 email from Debtor to Bridgeview Bank with Paul's Wife's Personal Financial Statement as attachment | | FRE 802 – Hearsay; 901-902 Foundation ; 401 – Relevance; 403 – Prejudice | |
| Exhibit 22 (BCL 0021-31) | 1/28/13 Purchase and Sale Agreement Between Debtor and BCL | | | |
| Exhibit 23 (S.J. Ex. 25) (BVB_BK007382-84) | 8/21/13 Debtor emails with Bridgeview | | FRE 802 – Hearsay; 901-902 Foundation ; 401 – Relevance; 403 – Prejudice | |

| Exhibit 24 (S.J. Ex. 26) (BVB_BK008505-07) | 10/2/13 Debtor emails with Bridgeview | | FRE 802 – Hearsay; 901-902 Foundation; 401 – Relevance; 403 – Prejudice | |
|---|---|---|---|---|
| Exhibit 25 | Statement of Loss for Broadway Ice Dam Claim | | | |
| Group Exhibit 26 BVB_BK006524-27) S.J.28 | 8/29/13 Debtor emails with Bridgeview. | | FRE 802 – Hearsay; 901-902 Foundation; 401 – Relevance; 403 – Prejudice | |
| Exhibit 27 (S.J. Ex. 29) | 8/30/13 BCL sale to EPA Settlement Statement | | | |
| Exhibit 28 (S.J. Ex. 30) | 10/31/13 EPA sale to EPC Settlement Statement | | | |
| Exhibit 29 (S.J. Ex. 31) | EPC statement of ownership | | | |
| Exhibit 30 (S.J. Ex. 32) | 12/31/13 Wire email and confirmation of EPA closing proceeds to Touhy | | | |
| Exhibit 31 (S.J. Ex. 33) | Account Ledger for EPA funds produced by Touhy | | FRE 802 – Hearsay; 901-902 Foundation; 401 – Relevance; 403 – Prejudice | |

| | | | | |
|---|---|---|---|---|
| Exhibit 32 (S.J. Ex. 34) | EPA Belmont Bank Account Statements for EPA Account ending in x5460 | | FRE 802 – Hearsay; 901-902 Foundation ; 401 – Relevance; 403 – Prejudice | |
| Exhibit 33 (S.J. Ex. 35) | Touhy Affidavit attached as Ex 10 to Touhy's Response to PNC's Mot. to Compel (doc. 146-21). | | FRE 802 – Hearsay; 901-902 Foundation | |
| Exhibit 34 (S.J. Ex. 36) (BVB_BK00849 9-8501) | Debtor 10/14/13 email to Bridgeview re collecting rent for EPA. | | FRE 802 – Hearsay; 901-902 Foundation | |
| Exhibit 35 (S.J. Ex. 37) (BVB_BK00716 0) | Debtor 10/21/13 email to Bridgeview re Libman's Application. | | FRE 802 – Hearsay; 901-902 Foundation | |
| Exhibit 36 (S.J. Ex. 38) (BVB_BK00709 5-96) | Bridgeview Bank 5/26/15 email to Debtor re late payments. | | FRE 802 – Hearsay; 901-902 Foundation | |
| Exhibit 37 (S.J. Ex. 39) | Bridgeview Bank Loan approval for Sharise Leongas and Glenn Udell. | | FRE 802 – Hearsay; 901-902 Foundation ; 401 – Relevance; 403 – Prejudice | |
| Group Exhibit 38-1 (S.J. Ex. 40) | 5/23/15 Change in Terms for Bridgeview Loan x10301 | | FRE 802 – Hearsay; 901-902 Foundation ; 401 – Relevance; 403 – Prejudice | |

| | | | |
|---|---|---|---|
| Group Exhibit 38-2 (S.J. Ex. 40) | 12/16/13 Note x23001 from Debtor and Sharise Leongas to Bridgeview Bank | | FRE 401 – Relevance |
| Group Exhibit 38-3 (S.J. Ex. 40) | 12/16/13 Mortgage securing loan x23001 | | FRE 802 – Hearsay; 901-902 Foundation ; 401 – Relevance |
| Group Exhibit 38-4 (S.J. Ex. 40) | 9/23/11 Mortgage securing x10301 | | FRE 802 – Hearsay; 901-902 Foundation ; 401 – Relevance |
| Exhibit 39 (S.J. Ex. 42) | Debtor's 4/27/16 Affidavit of Completeness. | | FRE 401 - Relevance |
| Exhibit 40 (S.J. Ex. 43) | Copies of Checks from Bridgeview Bank Account No. x1301 cashed by Debtor. | | FRE 802 – Hearsay; 901-902 Foundation ; 401 – Relevance; 403 – Prejudice |
| Exhibit 41 (S.J. Ex. 44) | A copy of the check payable to Paul and Sharise Leongas for 2014 State Tax Refund | | |
| Exhibit 42 (S.J. Ex. 45) | A copy of the check payable to Paul and Sharise Leongas for 2014 Federal Tax Refund | | |
| Exhibit 43 (S.J. Ex. 46) | Response Brief Showing Debtor was represented by counsel in the Citations Proceeding. | | FRE 802 – Hearsay; 901-902 Foundation ; 401 – Relevance; 403 – Prejudice |

| Exhibit 44 (S.J. Ex. 47) | PNC's Judgments against Paul Leongas in case numbers 09-CH-21374 and 09-CH-17036. | | | |
| --- | --- | --- | --- | --- |
| Exhibit 45 (S.J. Ex. 48) | Debtor's 2011 Credit Application to Bridgeview Bank | | FRE 802 – Hearsay; 901-902 Foundation; 401 – Relevance; 403 – Prejudice | |
| Exhibit 46 (S.J. Ex. 49) | Irish Spirits, LLC Sec of State printed 11/7/18. | | FRE 802 – Hearsay; 901-902 Foundation; 401 – Relevance | |
| Exhibit 47 (BANCORP_00 014-20) | Lease dated November 1, 2013 between EPC and EP Curragh and Holland Pub. | | FRE 802 – Hearsay; 901-902 Foundation; 401 – Relevance; 403 – Prejudice | |
| Exhibit 48 (S.J. Reply Ex. 68) | 9362 Joint Venture, LLC Bankruptcy Petition | | FRE 401 – Relevance; 403 – Prejudice | |
| Exhibit 49 (S.J. Reply Ex. 69) | 841 Joint Venture, LLC Bankruptcy Petition | | FRE 401 Relevance; 403 – Prejudice | |
| Exhibit 50-1 (S.J. Reply Ex. 70) | EP Curragh, LLC Bankruptcy Petition | | FRE 401 Relevance; 403 – Prejudice | |
| Exhibit 50-2 (S.J. Reply Ex. 71) | PLL, LLC Bankruptcy Petition | | | |

| | | | |
|---|---|---|---|
| Exhibit 51 (S.J. Reply Ex. 73) | May 26, 2015 order from Citation Hearing | | FRE 401 Relevance; 403 – Prejudice | |
| Exhibit 52 (S. Leongas Dep. Ex. 2) | All debits, credits, and statements from PRCB Account ending in 9701 for 2013 to 2015. | | FRE 401 Relevance; 403 – Prejudice | |
| Exhibit 53 (P. Leongas Dep. Ex. 4) | Benjamin Rules for Filing Bankruptcy KB1 | | FRE 802 – Hearsay; 901-902 Foundation ; 401 – Relevance; 403 – Prejudice | |
| Exhibit 54 (P. Leongas Dep. Ex. 5) | Benjamin CH 7 Process Information KB273 | | FRE 802 – Hearsay; 901-902 Foundation ; 401 – Relevance; 403 – Prejudice | |
| Exhibit 55 (P. Leongas Dep. Ex. 6) | Benjamin Debt Assistance Initial Consultation KB281 | | FRE 802 – Hearsay; 901-902 Foundation ; 401 – Relevance; 403 – Prejudice | |
| Exhibit 56 (P. Leongas Dep. Ex. 7) | Benjamin Leongas Questionnaire KB99 | | FRE 802 – Hearsay; 901-902 Foundation ; 401 – Relevance; 403 – Prejudice | |

| | | | | |
|---|---|---|---|---|
| Exhibit 57 (P. Leongas Dep. Ex. 1) | Paul and Sharise's 2013 Tax Returns | | FRE 802 – Hearsay; 901-902 Foundation; 401 – Relevance; 403 – Prejudice | |
| Exhibit 58 (P. Leongas Dep. Ex. 2) | Paul and Sharise's 2014 Tax Returns | | FRE 802 – Hearsay; 901-902 Foundation; 401 – Relevance; 403 – Prejudice | |
| Exhibit 59 (P. Leongas Dep. Ex. 3) | Paul and Sharise's 2015 Tax Returns | | | |
| Exhibit 60-1 | Paul and Sharise's 2012 Tax Returns | | FRE 802 – Hearsay; 901-902 Foundation; 401 – Relevance; 403 – Prejudice | |
| Exhibit 60-2 | Paul and Sharise's 2011 Tax Returns | | FRE 802 – Hearsay; 901-902 Foundation; 401 – Relevance; 403 – Prejudice | |
| Exhibit 61 | November 1, 2013 Lease Between EPC and EP Curragh, LLC and Holland Pub, LLC. | | FRE 802 – Hearsay; 901-902 Foundation; 401 – Relevance | |

| Exhibit 62 (P. Leongas Dep. Ex. 14) | 10/30/18 FAFSA Application produced by Debtor | | FRE 802 – Hearsay; 401 – Relevance; 403 – Prejudice | |
|---|---|---|---|---|
| Exhibit 63 (P. Leongas Dep. Ex. 15) | 6/27/19 FAFSA Application produced by Debtor | | FRE 802 – Hearsay; 401 – Relevance; 403 – Prejudice | |
| Exhibit 64 (P. Leongas Dep. Ex. 17) | American Express Statements Marked "B" or "P" by Debtor for account x1002. | | FRE 802 – Hearsay; 401 – Relevance; 403 – Prejudice | |
| Exhibit 65 (P. Leongas Dep. Ex. 18) | Skokie Curragh, LLC documents produced by Debtor re booking of loans. | | | |
| Exhibit 66 (P. Leongas Dep. Ex. 19) | Holland Pub, LLC and Edison Park Curragh documents produced by Debtor re booking of loans. | | | |
| Exhibit 67 (P. Leongas Dep. Ex. 20) | Holland Pub, LLC documents produced by Debtor re booking of loans. | | | |
| Exhibit 68 (P. Leongas Dep. Ex. 21) | EPC Properties, LLC documents produced by Debtor re booking of loans. | | | |
| Exhibit 69 (Benjamin Dep. Ex. 5) | 9/20/15 4:04 P.M. Email from Benjamin to Debtor | | | |
| Exhibit 70 (Benjamin Dep. Ex. 5) | 9/20/15 8:40 P.M. Email from Debtor to Benjamin. | | | |
| Exhibit 71 (Touhy Dep. Ex. 1) | 9/1/06 EP Curragh, LLC lease with PLL | | FRE 802 – Hearsay; 401 – Relevance; 403 – Prejudice | |

| | | | | |
|---|---|---|---|---|
| Exhibit 72 (Touhy Dep. Ex. 2) | 1/28/13 Agreement to Manage/Purchase Real Estate between Debtor and BCL (BCL 869) | | FRE 802 – Hearsay; 401 – Relevance; 403 – Prejudice | |
| Exhibit 73 (Touhy Dep. Ex. 3) | 1/28/13 Purchase and Sale Agreement between BCL and Debtor (BCL 32) | | | |
| Exhibit 74 (Bates 3rd Parties 3613-3623) | Purchase and Sale Agreement between BCL and EPA (produced by Debtor) | | FRE 802 – Hearsay; 901-902 – Foundation; 401 – Relevance; 403 – Prejudice | |
| Exhibit 75 (Touhy Dep. Ex. 6) (BANCORP000 22-23) | 2/14/13 Real Estate Purchase Contract between EPC and EPA. | | FRE 802 – Hearsay; 901-902 – Foundation; 401 – Relevance; 403 – Prejudice | |
| Exhibit 76 (Touhy Dep. Ex. 7)(BANCORP00 024-30) | 2/14/13 Purchase Promissory Note between EPC and EPA. | | FRE 802 – Hearsay; 901-902 – Foundation; 401 – Relevance; 403 – Prejudice | |
| Exhibit 77 | BVB Records Showing Payments on Libman Loan x7500 | | FRE 802 – Hearsay; 901-902 – Foundation | |

| | | | | |
|---|---|---|---|---|
| Exhibit 78 (Touhy Dep. Ex. 9) | BVB Loan History for EPA Loan x7500 | | FRE 802 – Hearsay; 901-902 – Foundation; 401 – Relevance; 403 – Prejudice | |
| Exhibit 79 BVB-BK 3646-48 | BVB Records Showing Payments on Paul and Sharise's Loan x6700 | | FRE 802 – Hearsay; 901-902 – Foundation; 401 – Relevance; 403 – Prejudice | |
| Exhibit 80 | BVB Change in Terms on Paul and Sharise's Loan x6700 | | | |
| Exhibit 81 | 11/12/13 Real Estate Purchase Contract between EPC and EPA attached as Ex 21 to Touhy's Response to PNC's Mot. to Compel (doc. 146-21). | | FRE 802 – Hearsay; 901-902 – Foundation; 401 – Relevance; 403 – Prejudice | |
| Exhibit 82 (Touhy Dep. Ex. 11) | 11/12/13 Real Estate Purchase Contract between EPC and EPA produced by Touhy bates A7 | | FRE 802 – Hearsay; 901-902 – Foundation; 401 – Relevance; 403 – Prejudice | |
| Exhibit 83 (Touhy Dep. Ex. 10) | 11/14/13 11:48 A.M. email between Debtor and Touhy bates 0021 PR | | FRE 401 – Relevance | |
| Exhibit 84 (Touhy Dep. Ex. 13) | 1/10/14 11:05 A.M. email between Debtor and Touhy bates 0086 PR | | FRE 401 - Relevance | |

| | | | | |
|---|---|---|---|---|
| Exhibit 85 (Touhy Dep. Ex. 12) | Contract Rider produced by Touhy bates A27-34 | | FRE 802 – Hearsay; 901-902 – Foundation; 401 – Relevance; 403 – Prejudice | |
| Exhibit 86 (Touhy Dep. Ex. 14) | Real Estate Purchase Contract dated 9/10/13 between EPA and EPC produced by Bancorp bates Bancorp_00021. | | FRE 802 – Hearsay; 901-902 – Foundation; 401 – Relevance; 403 – Prejudice | |
| Exhibit 87 (Touhy Dep. Ex. 16) | EPA Bridgeview Bank account records for account ending in x3569 | | FRE 802 – Hearsay; 901-902 – Foundation; 401 – Relevance; 403 – Prejudice | |
| Exhibit 88 | BVB Loan application with rent roll for Edison Park Property.  BVB BK 4509-4517 | | FRE 802 – Hearsay; 901-902 – Foundation; 401 – Relevance; 403 – Prejudice | |
| Exhibit 89 | Sharise Refi Application and email with Jung re date.  BVB BK 6133-37 | | FRE 802 – Hearsay; 901-902 – Foundation; 401 – Relevance; 403 – Prejudice | |

| | | | | |
|---|---|---|---|---|
| Exhibit 90 | Paul email with BVB re EPA Escrow refund.  BVB BK 6395 | | FRE 802 – Hearsay; 901-902 – Foundation; 401 – Relevance; 403 – Prejudice | |
| Exhibit 91 | Paul email with BVB re checking time to clear.  BVB BK. 6237 | | FRE 802 – Hearsay; 901-902 – Foundation | |
| Exhibit 92 | Paul email with BVB re EPA excess.  BVB BK 6443 | | FRE 802 – Hearsay; 901-902 – Foundation; 401 – Relevance; 403 – Prejudice | |
| Exhibit 93 | Paul email with BVB re EPA excess.  BVB BK 6479 | | FRE 802 – Hearsay; 901-902 – Foundation; 401 – Relevance; 403 – Prejudice | |
| Exhibit 94 | BVB email with Debtor re over drafts and Debtor loan being classified.  BVB BK 5683 | | FRE 802 – Hearsay; 901-902 – Foundation | |
| Exhibit 95 | Debtor emails with BVB re debit from EPA account.  BVB BK 6412-15 | | FRE 802 – Hearsay; 901-902 – Foundation; 401 – Relevance; 403 – Prejudice | |

| | | | | |
|---|---|---|---|---|
| Exhibit 96 | Debtor emails with BVB re excess EPA funds.  BVB BK 6420-21 | | FRE 802 – Hearsay; 901-902 – Foundation ; 401 – Relevance; 403 – Prejudice | |
| Exhibit 97 | Debtor emails with BVB re June 14 HELOC payment. BVB BK 6218-6222 | | FRE 802 – Hearsay; 901-902 – Foundation ; 401 – Relevance; 403 – Prejudice | |
| Exhibit 98 | BVB email with Debtor re escrow deficiency. BVB BK 6228. | | FRE 802 – Hearsay; 901-902 – Foundation ; 401 – Relevance; 403 – Prejudice | |
| Exhibit 99 | 12/21/15 Debtor email with Benjamin re loans. | | | |
| Exhibit 100 | Debtor Transfers of 8266 Lincoln, LLC and Skokie Curragh, LLC to EGIO Consulting, LLC | | FRE 401 – Relevance; 403 – Prejudice | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

PNC reserves the right to supplement, revise, or renumber this exhibit list at any time prior to the deadline for submitting it pursuant to the final trial order entered in these proceedings.

Dated: February 24, 2020                    Respectfully submitted,


                                            /s/ Matthew L. Hendricksen
                                            James M. Crowley
                                            John F. Sullivan
                                            Matthew L. Hendricksen
                                            PLUNKETT COONEY PC
                                            221 North LaSalle Street
                                            Suite 1550
                                            Chicago, Illinois 60654
                                            Telephone: (312) 670-6900
                                            Facsimile: (312) 467-5926

                                            Attorneys for PNC Bank, N.A.

Open.26645.73625.23675515-1

**EXHIBIT 5**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re | ) | Chapter 7 |
|  | ) |  |
| PAUL L. LEONGAS, | ) | Case No. 15 B 27967 |
|  | ) |  |
| Debtor. | ) | Hon. Janet S. Baer |
| _____ | ) |  |
| PNC BANK, N.A., | ) |  |
| Plaintiff, | ) |  |
|  | ) | Adversary No.: 16 A 489 |
| v. | ) |  |
|  | ) |  |
| PAUL L. LEONGAS | ) |  |
| Defendant. | ) |  |
|  | ) |  |

## DEFENDANT'S EXHIBIT LIST

| Exhibit | Description | Offered | Objected | Admitted |
|---|---|---|---|---|
| 1 | VP and Matrix Filed 8.16.15 |  |  |  |
| 2 | VP and Matrix Filed.8.16.15.Signature Pages |  |  |  |
| 3 | Attorneys Disclosure of Comp.2016 Statement |  |  |  |
| 4 | Motion to Extend Time to File Schedules.8.31.15 |  |  |  |
| 5 | Service List - Motion to Extend Time |  |  |  |
| 6 | Form 22A.Debtors Statement of Current Monthly Income |  |  |  |
| 7 | Filed Debtor's Schedules, SOFA and Intent |  |  |  |
| 8 | Signature Pages Dated 9.20.15.Schedules SOFA Intent |  |  |  |
| 9 | Signature Page - Form 22A dated 9.21.15 |  |  |  |
| 10 | Filed Summary of Schedules and Schedules I and J |  |  |  |
| 11 | Signature Page - Schedules Dated 9.21.15 |  |  |  |
| 12 | Complete Bankruptcy Petition and Schedules |  |  |  |
| 13 | Hendricksen Appearance filed 8.18.15 |  |  |  |
| 14 | Docket Debtor's Bankruptcy |  |  |  |
| 15 | Docket PLL, LLC Bankruptcy |  |  |  |
| 16 | Docket EP Curragh, LLC Bankruptcy |  |  |  |

| 17 | Letter from Richard J Mason Dated 11.11.15 | | Hearsay. | |
| 18 | PLL Foreclosure Complaint filed 8/10/09 | | | |
| 19 | 9362 Joint Venture, LLC Foreclosure filed 5/21/09 | | | |
| 20 | Certificate for Sale Edison Park Property dated 1/29/13 | | | |
| 21 | Order Approving Sale for property located at 6701-09 N. Northwest Hwy., Chicago, IL dated 7/25/13 | | | |
| 22 | BCL Deed to EPA | | | |
| 23 | Sharise Leongas PRCB Bank Records | | | |
| 24 | Evidence of Insurance Proceeds | | | |
| 25 | Docket from Broadway Foreclosure | | | |
| 26 | Paul & Sharise Leongas Deed to Broadway Property in TBE | | | |
| 27 | Bank of America Short Sale Approval | | | |
| 28 | Deed from Leongas to Libman | | | |
| 29 | Deed Libman to Trust | | | |
| 30 | Limited Liability Downtown Holland Properties | | | |
| 31 | Limited Liability EP CURRAGH | | | |
| 32 | Limited Liability HOLLAND PUB | | | |
| 33 | Limited Liability EPC PR | | | |
| 34 | Skokie Curragh LLC documents re: booking loans | | | |
| 35 | Holland Pub LLC and Edison Park Curragh re: booking loans | | | |
| 36 | Holland Pub LLC re: booking loans | | | |
| 37 | EPC Properties re: booking loans | | | |
| 38 | Email from Debtor to K Benjamin 9.20.15 | | | |

By: /s/ Konstantine Sparagis
One of his Attorneys

Konstantine Sparagis
(6256702) Law Offices of
Konstantine Sparagis 900 W.
Jackson Blvd., Ste. 4E
Chicago, IL 60607 PH: 312-
753-6956 FX: 866-333-1840
gus@konstantinelaw.com